[No. 57047–7. En Banc. December 13, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. DIANE
ELAINE BOWERMAN, *Petitioner.*

*Julie A. Kesler, Jesse Wm. Barton,* and *Suzanne Lee Elliott* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Theresa L. Fricke, Deputy,* for respondent.

UTTER, J.—A jury found Diane Bowerman guilty of aggravated first degree murder. In an unpublished opinion, the Court of Appeals affirmed the conviction. We granted her petition for review to consider the following questions:

(1) Since Bowerman was charged in the alternative with felony murder, to which if she pleaded guilty she would have received a maximum penalty of life with the possibility of parole, and aggravated first degree murder, does her sentence of life in prison without the possibility of parole unconstitutionally penalize her for exercising her right to trial?

(2) Did the trial court's refusal to grant instructions on the lesser included offenses of second degree murder and first and second degree manslaughter require reversal?

(3) Was she denied effective assistance of counsel?

After considering all of these issues, we affirm the conviction and sentence.

On August 4, 1987, James Hutcheson killed Matthew Nickel by striking him several times in the head with a tire

iron. The next day the King County prosecutor filed an information accusing Diane Bowerman (Nickel's co–worker and former girl friend), Diane Peterson, and Hutcheson of premeditated first degree murder. The State later amended the information to charge Hutcheson with killing Nickel pursuant to an agreement that he receive money for the murder.[1]

On October 22, the State filed a third amended information accusing Bowerman of committing aggravated murder in the first degree by paying Hutcheson to kill Nickel. On that same day, defense counsel informed the State that Bowerman would present a diminished capacity defense at trial.

On the first day of the trial, in contemplation that the jury might accept Bowerman's diminished capacity claim, the State moved to amend the information to add a count of first degree felony murder. The prosecutor characterized her amendment as merely adding a lesser included offense to the information. The trial court ruled that the defense had adequate notice of the facts supporting the felony murder charge and allowed the amendment. Bowerman did not request a continuance.

During the trial Bowerman presented expert testimony that she was incapable of forming either the intent or the premeditation to kill Nickel. The defense theory of the case was that Bowerman contracted with Hutcheson merely to injure Nickel, and that she neither wanted nor contemplated Nickel's death.

At the close of the trial, defense counsel requested jury instructions for the lesser included offenses of second degree murder and first and second degree manslaughter. The trial court refused the offered instructions, and defense counsel timely objected. Over defense counsel's objection, the trial court did instruct the jury that felony first degree

---

[1] A jury found Hutcheson guilty of first degree aggravated murder. Peterson pleaded guilty to rendering criminal assistance in the first degree.

murder was a lesser included offense of aggravated first degree murder.

The jury found Bowerman guilty of aggravated first degree murder. The court sentenced her to life without possibility of parole. In an unpublished opinion, the Court of Appeals affirmed the conviction and sentence.

## I

Bowerman argues that her sentence unconstitutionally penalizes her for exercising her right to a jury trial. She bases her argument on the holding in *United States v. Jackson*, 390 U.S. 570, 20 L. Ed. 2d 138, 88 S. Ct. 1209 (1968). In *Jackson*, the Supreme Court held the Federal Kidnapping Act unconstitutional, since the act imposed a greater penalty on those who were convicted by a jury than it did on those who pleaded guilty. Bowerman asserts that the sentence she received is greater than the one she would have received if she pleaded guilty. Therefore, she argues, her sentence is unconstitutional. In order to invoke the *Jackson* doctrine, Bowerman first raises several issues related to the amendment of the information, the trial court's failure to rearraign her on the fourth amended information, and her right to plead guilty.

Bowerman argues that the trial court erred in not rearraigning her on the fourth amended information containing the felony murder charge. If the trial court had rearraigned her, Bowerman asserts, she had a right to plead guilty to just the felony murder charge, thereby foreclosing any trial on the aggravated murder charge. She does not argue that any of these alleged errors by themselves require reversal of her sentence. Instead, she raises these issues because she believes she needs to assert her right to plead guilty in order to raise the *Jackson* issue. The *Jackson* analysis does not, however, hinge on whether the defendant has a right to plead guilty. Instead, the focus is on whether the statutory scheme unconstitutionally infringes defendant's right to trial. Nonetheless, we will briefly discuss Bowerman's claim that she had a right to plead guilty to

the felony murder portion of the amended information, and that she would have thereby avoided the greater penalty associated with a trial on the aggravated murder charge.

## A

■■ There is no constitutional right to plead guilty. *Jackson,* 390 U.S. at 584; *State v. Martin,* 94 Wn.2d 1, 4, 614 P.2d 164 (1980). However, the State may confer a statutory right to plead guilty. *North Carolina v. Alford,* 400 U.S. 25, 38 n.11, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970); *Martin,* 94 Wn.2d at 4. In *State v. Martin, supra,* this court held that CrR 4.2(a)[2] grants a criminal defendant the right to plead guilty "unhampered by a prosecuting attorney's opinions or desires." *Martin,* at 5. However, that right is not, as Bowerman asserts, a right to plead guilty to just one alternative means of committing a crime when more than one means is charged. The statutory right to plead guilty is a right to plead guilty to the information *as charged.*

In *State v. Duhaime,* 29 Wn. App. 842, 631 P.2d 964 (1981), *review denied,* 97 Wn.2d 1009 (1982), the defendant went to trial on several charges. Count 3 of the information charged the defendant with having committed premeditated murder in the first degree and felony murder. Midtrial the defendant attempted to enter a plea of guilty to just the felony murder portion of count 3. The judge refused to accept the guilty plea, and the jury found the defendant guilty of premeditated murder. The Court of Appeals upheld the conviction, noting that nothing in *Martin* or the court rules requires that a defendant be allowed to plead guilty to a lesser offense solely to avoid the harsher punishment of the greater offense. *Duhaime,* 29 Wn. App. at 854. In essence, the *Duhaime* court held that the right to plead guilty is only a right to plead as charged.

■■ Bowerman's situation is similar to that of the defendant in *Duhaime.* Count 1 of the fourth amended

---

[2]"A defendant may plead not guilty, not guilty by reason of insanity or guilty." CrR 4.2(a).

information charged Bowerman with the single crime of first degree murder. The count alleged two alternative ways of committing that single crime: (1) aggravated, premeditated murder, and (2) felony murder. Premeditated murder and felony murder are not separate crimes. They are alternate ways of committing the single crime of first degree murder. *State v. Ellison*, 36 Wn. App. 564, 574–75, 676 P.2d 531, *review denied*, 101 Wn.2d 1010 (1984). Where there are alternate ways to commit a crime it is permissible to charge both alternatives in the same count. *State v. Scott*, 64 Wn.2d 992, 993, 395 P.2d 377 (1964). Had Bowerman been rearraigned on the amended information, she would have been rearraigned on both alternate ways of committing the one crime of first degree murder charged in count 1. At that time she would have had a statutory right to plead guilty to first degree murder. She would not have had the right to choose one portion (felony murder) of the charges against her and plead guilty to just that portion of the charge.

This is consistent with our holding in *State v. James*, 108 Wn.2d 483, 739 P.2d 699 (1987). In *James*, the defendant entered a not guilty plea to a charge of second degree murder. After further investigation the State amended the information to charge premeditated first degree murder. The defendant opposed the amendment, and sought to plead guilty to the original charge of second degree murder. The trial court refused defendant's guilty plea, and a jury found James guilty of first degree murder. In upholding the conviction, this court reasoned that allowing James to enter a plea of not guilty and then later demand the right to plead to the original charge would give him the right to enforce a mandatory plea bargain against the prosecutor's wishes. 108 Wn.2d at 489.

Accepting Bowerman's argument would have similar effects. It would allow defendants to force a plea bargain on a prosecutor anytime that prosecutor charges more than one means of committing a crime. It would also undercut the prosecutor's well–recognized discretion to determine

which charges to file.[3] The statutory right to plead guilty recognized in *Martin* cannot be stretched so far as to include a right to plead guilty to only one alternative means out of several that are charged. Where an information alleges more than one means of committing a single crime, the right to plead guilty is a right to plead guilty to the one crime charged.[4]

## B

This brings us to petitioner's *Jackson* argument. In its third amended information, the State charged Bowerman with aggravated first degree murder in violation of RCW 10.95.020(4) (murder for hire) and RCW 9A.32.030(1)(a). The minimum penalty for aggravated first degree murder is life without possibility of parole. RCW 10.95.030(1).

On the first day of Bowerman's trial, the prosecutor amended the information to add an alternative allegation of felony murder.[5] The maximum penalty for felony murder is life in prison with a possibility of parole. RCW 9A.32.040. Bowerman argues that the statutory scheme under which she was charged forced her to make an unconstitutional choice. This claimed choice was between exercising her right to trial, and thereby facing a possible sentence of life without the possibility of parole, or pleading guilty to assure herself of the lesser sentence of life with a possibility of parole. She then concludes that such a statutory scheme unconstitutionally infringes her right to have a jury trial. Bowerman rests her argument on the holdings in three cases: *United States v. Jackson,* 390 U.S. 570, 20 L. Ed. 2d 138, 88 S. Ct. 1209 (1968); *State v. Frampton,* 95 Wn.2d

---

[3]*See, e.g., State v. Judge,* 100 Wn.2d 706, 713, 675 P.2d 219 (1984).

[4]Contrary to Bowerman's argument, even if she had been able to plead guilty to felony murder, that would not necessarily have prevented trial on the aggravated murder charge. *See Ohio v. Johnson,* 467 U.S. 493, 81 L. Ed. 2d 425, 104 S. Ct. 2536 (1984) and *State v. Netling,* 46 Wn. App. 461, 731 P.2d 11, *review denied,* 108 Wn.2d 1011 (1987).

[5]She was charged specifically with a violation of RCW 9A.32.030(1)(c)(3).

469, 627 P.2d 922 (1981); *Robtoy v. Kincheloe,* 871 F.2d 1478 (9th Cir. 1989), *cert. denied,* ___ U.S. ___, 108 L. Ed. 2d 619, 110 S. Ct. 1483 (1990).

In *United States v. Jackson, supra,* the Supreme Court invalidated the death penalty portion of the Federal Kidnapping Act. The Court interpreted the act as imposing the death penalty only on people who were convicted by a jury. Therefore, a person could always avoid the death penalty by pleading guilty. The Court held that by confronting a defendant with the choice of pleading guilty, and thereby avoiding the death penalty, or going to trial and risking the death penalty, the act imposed an "impermissible burden" on the constitutional right to have a jury trial. 390 U.S. at 572.

In *State v. Martin,* 94 Wn.2d 1, 614 P.2d 164 (1980), this court interpreted former RCW 10.94 as imposing the death penalty only on those people whom a jury found guilty of first degree murder. Following the *Jackson* reasoning, this court then struck down the state death penalty statute as imposing an unconstitutional burden on the right to trial. *State v. Frampton,* 95 Wn.2d 469, 627 P.2d 922 (1981). The *Frampton* court held, however, that it was not impermissible for a statutory scheme to set a maximum penalty of life with the possibility of parole for those who plead, while subjecting those who go to trial with a minimum sentence of life without the possibility of parole. 95 Wn.2d at 528–30 (Dimmick, J., concurring in part, dissenting in part (majority opinion on this issue)).

The Ninth Circuit Court of Appeals disagreed. It held that, due to the qualitative difference between the penalties, imposing a sentence of life without possibility of parole only on those who are found guilty by a jury also violates the defendant's right to a jury trial. *Robtoy v. Kincheloe,* 871 F.2d 1478 (9th Cir. 1989), *cert. denied,* ___ U.S. ___, 108 L. Ed. 2d 619, 110 S. Ct. 1483 (1990).

Bowerman argues that her sentence unconstitutionally infringes her Fifth Amendment right not to plead guilty and her Sixth Amendment right to a jury trial. Under

Bowerman's theory, she had two options. She could avoid life without possibility of parole by pleading guilty to the felony murder charge, or she could go to trial on the aggravated murder charge and risk a sentence of life without possibility of parole. Bowerman then asserts that the disparate sentences for those who plead guilty and those who go to trial unconstitutionally infringes her right to plead not guilty and her right to a jury trial. She then concludes that *Jackson* and *Robtoy* mandate reversal of her sentence.

 Bowerman's reliance on *Jackson* is misplaced. *Jackson* addresses a statutory scheme where someone who pleads guilty to kidnapping faces a lesser maximum sentence than someone who has a jury trial on a kidnapping charge. *Frampton* and *Robtoy* each address a statutory scheme where someone who pleads guilty to first degree murder faces a lesser maximum sentence than someone who has a jury trial on a first degree murder charge. Those cases stand for the principle that a statutory scheme that punishes people *charged with the same offense* differently, depending upon whether they plead guilty or have a jury trial, is unconstitutional.

Washington's statutory scheme does not punish people differently based on how guilt is determined. A person who pleads guilty to felony murder faces the same maximum penalty as a person a jury convicts of felony murder. Similarly, a person who pleads guilty to aggravated murder faces the same maximum penalty as a person the jury convicts of aggravated murder. The statutes in *Jackson, Frampton,* and *Robtoy* treated people charged with the same crime differently depending upon whether they pleaded guilty or were found guilty by a jury. Under the current Washington statutes, however, people charged with the same crime face the same maximum penalty regardless of how their guilt is determined. The different maximum sentences that Bowerman faced were based upon *which charge she was convicted of,* not upon how her guilt was determined. Therefore, there is no unconstitutional infringement on her right to trial.

It is true that a defendant faced with the possibility of pleading to felony murder or going to trial on a charge of aggravated murder may choose the former in order to assure receiving the lesser penalty. Therefore, the possibility of getting a more lenient sentence may cause some people to forgo their right to trial. The Supreme Court has made clear, however, that not every burden on the right to trial is unconstitutional. *Corbitt v. New Jersey,* 439 U.S. 212, 218, 58 L. Ed. 2d 466, 99 S. Ct. 492 (1978).

In *Corbitt,* the Court upheld a New Jersey statute that prescribed a mandatory life sentence when a jury convicted a defendant of first degree murder. That same statute allowed a judge sentencing a defendant who pleaded nolo contendere to impose a lesser sentence than life in prison. The Court upheld the New Jersey statute because the potential *maximum* penalty was the same, regardless of whether the defendant pleaded or was convicted by a jury. 439 U.S. at 217. The fact that someone who pleads faces a *potentially* lesser penalty does not invalidate the statute. As the *Corbitt* Court noted:

> [N]ot every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is invalid. Specifically, there is no *per se* rule against encouraging guilty pleas. We have squarely held that a State may encourage a guilty plea by offering substantial benefits in return for the plea. . . .
>
> . . . .
> . . . There is no doubt that [defendants willing to plead guilty] may be treated more leniently than those who go to trial, but withholding the possibility of leniency from the latter cannot be equated with impermissible punishment as long as our cases sustaining plea bargaining remain undisturbed. . . .

(Footnotes omitted.) 439 U.S. at 218–19, 223–24.

The prosecutor in Bowerman's case added the alternative charge of felony murder in case the jury believed Bowerman's diminished capacity defense. That amendment was proper and did not violate Bowerman's rights. Bowerman was faced with the choice of pleading guilty to a charge of first degree murder or going to trial on a charge of first degree murder. The penalty is the same regardless of how

her guilt is determined. Therefore, her right to trial was not violated.

## II

Bowerman next asserts the trial court erred in not granting her requested instructions on second degree murder, first degree manslaughter, and second degree manslaughter as lesser included offenses of aggravated murder.

The right to present a lesser included offense to the jury is a statutory right.[6] A defendant is entitled to an instruction on a lesser included offense if two conditions are met.

> First, each of the elements of the lesser offense must be a necessary element of the offense charged. Second, the evidence in the case must support an inference that the lesser crime was committed.

(Citations omitted.) *State v. Workman,* 90 Wn.2d 443, 447–48, 584 P.2d 382 (1978). Under the facts of Bowerman's case the elements of aggravated first degree murder are: (1) causing the death of another; (2) premeditation; (3) intent to cause death; and (4) paying another to commit the crime. RCW 9A.32.030(1)(a); RCW 10.95.020(4). The elements of second degree murder are: (1) causing the death of another; and (2) intent to cause death. RCW 9A.32.050. It is clear that proving aggravated first degree murder necessarily includes proving all of the elements of second degree murder. Therefore, the elements prong of the *Workman* test is met. The question then becomes whether the facts support an inference that only second degree murder was committed.

Petitioner's theory of the case is that she hired Hutcheson to "rough up" the victim. She asserts that she did not intend to have the victim killed. The State argues that Bowerman's testimony that she contracted with Hutcheson to hurt Nickel shows premeditation. Premeditation is an

---

[6] "In all other cases the defendant may be found guilty of an offense the commission of which is necessarily included within that with which he is charged in the indictment or information." RCW 10.61.006.

element of first degree murder, but it is not an element of second degree murder. Therefore, the State concludes, a second degree murder instruction is not appropriate, since Bowerman admits to premeditation.

The State's argument is incorrect. The premeditation Bowerman admits, if any, is the premeditated intent to injure Nickel. She did not admit a premeditated intent to kill him, and it is premeditated intent to kill that is an element of first degree murder. *State v. Davis,* 6 Wn.2d 696, 718, 108 P.2d 641 (1940); *State v. Bingham,* 40 Wn. App. 553, 555, 699 P.2d 262 (1985), *aff'd,* 105 Wn.2d 820, 719 P.2d 109 (1986).

Nonetheless, the facts of this case do not support giving a second degree murder instruction. Second degree murder is *intentional* murder without premeditation. RCW 9A.32.050. The defendant asserted that, due to her diminished capacity, she did not have the intent to kill Nickel. If the jury believed Bowerman's defense then it could not have found her guilty of second degree murder. Therefore, the only choices the jury would have had were to find Bowerman guilty of aggravated first degree murder, or to find her not guilty of any crime. Under those circumstances, a lesser included instruction is not warranted. *State v. Much,* 156 Wash. 403, 410, 287 P. 57 (1930); *State v. Snook,* 18 Wn. App. 339, 346, 567 P.2d 687 (1977).

Defense counsel also requested lesser included jury instructions on first and second degree manslaughter. The elements of first degree manslaughter are causing the death of another and recklessness. RCW 9A.32.060(1)(a). The elements of second degree manslaughter are causing the death of another and criminal negligence. RCW 9A.32.070. The mental elements of recklessness and criminal negligence are lesser included mental states of intent. RCW 9A.08.010(2); *State v. Jones,* 95 Wn.2d 616, 621, 628 P.2d 472 (1981). Therefore, both degrees of manslaughter are necessarily proved whenever aggravated first degree murder is proved. First and second degree manslaughter meet the first prong

of the *Workman* test for lesser included offenses of aggravated first degree murder. The question then becomes whether the facts of the case support giving the lesser included instructions. We conclude that they do not.

Bowerman's diminished capacity defense only goes to negate her capacity to premeditate on, and form the intent to bring about, the death of Nickel. If the jurors believed Bowerman's defense,[7] they would have found her not guilty of aggravated first degree murder. That defense did nothing, however, to negate Bowerman's alternative charge of first degree felony murder. Intent and premeditation are not elements of first degree felony murder. *See* RCW 9A.32.030(1)(c). The only state of mind the prosecution need prove to establish felony murder is the state of mind necessary to commit the underlying felony. *State v. Osborne,* 102 Wn.2d 87, 93, 684 P.2d 683 (1984). There was no testimony that Bowerman could not form the intent to injure Nickel or to plan the illegal entry into his home. In fact, Bowerman's testimony establishes that she helped Hutcheson commit first degree burglary. Bowerman showed Hutcheson where Nickel lived, told Hutcheson about the broken lock on Nickel's door, and told Hutcheson when he could expect to find Nickel home alone. She admitted paying Hutcheson to attack Nickel, and she knew Hutcheson planned to hide in Nickel's apartment and attack him there. Therefore, Bowerman admitted knowing of and aiding Hutcheson's commission of first degree burglary.[8] Since she admitted being an accomplice in the first degree burglary, there was no evidence from which the jury could do anything other than find her guilty of first degree felony

---

[7]The fact that the jury found Bowerman guilty of aggravated first degree murder instead of the lesser alternative of felony murder shows that the jury rejected Bowerman's diminished capacity defense.

[8]"A person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a dwelling and . . . assaults any person therein." RCW 9A.52.020(1)(b).

murder. As such, there was no error in denying the first and second degree manslaughter instructions.

### III

Bowerman also alleges she was denied the effective assistance of counsel. She specifically alleges that trial counsel inadequately cross–examined Darrell Seaver, a key state witness, and that trial counsel was "ill prepared" to deal with jury instructions.

The standard for determining whether there was ineffective assistance is:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. . . .

*Strickland v. Washington,* 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). This court adopted the *Strickland* test in *State v. Thomas,* 109 Wn.2d 222, 225, 743 P.2d 816 (1987). When reviewing counsel's performance under the *Strickland* test there is a strong presumption that the performance was reasonable. Bowerman bears the burden of showing that, but for the ineffective assistance, there is a reasonable probability that the outcome would have been different. *Thomas,* 109 Wn.2d at 226 (quoting *Strickland v. Washington,* 446 U.S. at 694).

Bowerman asserts that trial counsel inadequately cross–examined Darrell Seaver. Yet the record shows counsel's cross sought to corroborate his theory of the case by eliciting responses that supported the defense of diminished capacity and that established Seaver as the person who gave Bowerman ideas on how to harm Nickel. Counsel also asked questions that cast doubt on the accuracy of Seaver's recollections of his discussions with Bowerman. Counsel's cross of Seaver takes up 27 pages of the trial transcript. There is nothing in that cross examination that indicates

counsel's performance fell below the objective standard of reasonableness mandated by *Strickland*.

As to the alleged deficiencies in jury instructions, there is no showing that the instructions were insufficient or incorrect. Jury instructions are sufficient if they permit each party to argue his theory of the case and properly inform the jury of the applicable law. *State v. Rice*, 110 Wn.2d 577, 603, 757 P.2d 889 (1988), *cert. denied*, 491 U.S. 910, 105 L. Ed. 2d 707, 109 S. Ct. 3200 (1989). Other than the instructions that defense counsel excepted to, the instructions given allowed him to argue his theory of the case and accurately stated the law. Bowerman has made no showing that counsel's performance denied her a fair trial.

We affirm the conviction and the sentence.

CALLOW, C.J., and BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, DURHAM, SMITH, and GUY, JJ., concur.

Reconsideration denied February 21, 1991.