IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68542-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| JUAN OSORIO-NICOLAS, | ) | |
| | ) | |
| Appellant. | ) | FILED: September 23, 2013 |

SCHINDLER, J. — Juan Osorio-Nicolas appeals the order denying his motion to withdraw the guilty plea for delivery of methamphetamine in violation of the Uniform Controlled Substances Act, chapter 69.50 RCW. Osorio-Nicolas contends he did not voluntarily or intelligently enter into the plea. Because substantial evidence supports the court's finding that Osorio-Nicolas was clearly informed about the immigration consequences of a guilty plea, we affirm.

FACTS

Juan Osorio-Nicolas sold methamphetamine and heroin to a Seattle Police Department confidential informant. On January 27, 2011, the State charged Osorio-Nicolas with one count of delivery of methamphetamine and one count of delivery of heroin in violation of the Uniform Controlled Substances Act, RCW 69.50.401(1), (2)(a) and (b). Osorio-Nicolas retained attorney Anthony Grasher to represent him.

On June 8, 2011, Osorio-Nicolas entered a plea of guilty to one count of delivery of methamphetamine. A Spanish interpreter assisted Osorio-Nicolas. During the hearing, Osorio-Nicolas told the court that the interpreter translated the entirety of the "Statement of Defendant on Plea of Guilty." The Statement of Defendant on Plea of Guilty addresses the immigration consequences of the plea.

> If I am not a citizen of the United States, a plea of guilty to an offense punishable as a crime under state law is grounds for deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.

Osorio-Nicolas was also told that entering the guilty plea " 'is grounds for deportation' " and he "stated, on the record, that he understood this consequence of pleading guilty." The court found that Osorio-Nicolas was knowingly, intelligently, and voluntarily entering the plea of guilty. The court sentenced Osorio-Nicolas to 12 months and one day in prison.

Osorio-Nicolas filed a motion to withdraw his guilty plea and vacate the judgment and sentence. Osorio-Nicolas argued that he did not voluntarily and intelligently enter into the plea because his attorney did not advise him of the immigration consequences of pleading guilty to delivery of methamphetamine. The court held an evidentiary hearing on his motion withdraw the plea and vacate the judgment and sentence. Osorio-Nicolas and Grasher testified at the hearing.

Osorio-Nicolas testified that he met with Grasher two or three times. Osorio-Nicolas said that he told Grasher that he was a resident "[t]hrough my wife." According to Osorio-Nicolas, Grasher assured him that his immigration status "was no problem." Osorio-Nicolas also testified that his attorney never told him to contact an immigration attorney. Osorio-Nicolas said that Grasher only briefly summarized the plea form to him

at the plea hearing, and that neither Grasher nor the interpreter read to him the portion of the plea form that refers to the immigration consequences of the plea. Osorio-Nicolas said that he would not have pleaded guilty if he had known that he would be deported.

Grasher testified that he told Osorio-Nicolas that a conviction on the pending drug charges would result in "removal from the United States under federal immigration law." Grasher said that he recommended Osorio-Nicolas consult with an immigration attorney and gave him the name of an immigration attorney. But Osorio-Nicolas told Grasher that he had already met with an immigration attorney and was aware that he would be deported unless the charges were reduced to misdemeanors.

Grasher testified that he discussed the immigration consequences of entering into a guilty plea with Osorio-Nicolas multiple times and Osorio-Nicolas "was aware of the fact that, no matter what happened, whether it was a plea or a trial, that he would be deported." Grasher testified, "I absolutely know he knew he was going to be deported. There is no question about that." Grasher said that Osorio-Nicolas wanted to enter into the plea because he "didn't want to risk a 5- to 10-year sentence with the same result of him being deported."

In addition to the testimony at the hearing, the court also considered the Statement of Defendant on Plea of Guilty, the declaration of Grasher, and the DVD[1] recording of the June 8, 2011 plea hearing. The court denied the motion to withdraw the guilty plea and vacate the judgment and sentence.

The court found that Osorio-Nicolas's testimony was not credible. The court found that Grasher "correctly advised [Osorio-Nicolas] that pleading guilty to a charge of

---

[1] (Digital versatile disc.)

possession of methamphetamine with the intent to deliver would lead to deportation."

The court concluded that Osorio-Nicolas knowingly, voluntarily, and intelligently entered into the plea.

The court's findings of fact state, in pertinent part:

4.    [T]he Court finds that Mr. Grasher . . . correctly informed the Defendant that a conviction for the drug charges would result in the Defendant's removal from the United States under federal immigration law.  Mr. Grasher recommended that the Defendant consult with immigration counsel and the Defendant advised Mr. Grasher that he had already done so and was aware that the charges, if proven, would result in his deportation.

5.    The Defendant and Mr. Grasher discussed the immigration consequences of the pending charges on several occasions and also discussed the risk of taking the case to trial.  Mr Grasher attempted to negotiate a reduction of charges from felonies to misdemeanors, but the State rejected any proposal along that line because the State had evidence that the Defendant had engaged in four or five other deliveries of methamphetamine to the same confidential informant.  Mr. Grasher advised the Defendant that if he was prosecuted on all of these drug charges, he could face a sentence of 60 to 120 months in prison, with the inevitable deportation thereafter.

. . . .

7.    The Defendant testified that Mr. Grasher told him that he would not be deported and that he had nothing to worry about by pleading guilty.  The Court does not find this testimony to be credible.  Mr. Grasher has been practicing criminal law in both state and federal courts since 2006 and has experience with defendants facing immigration consequences as the result of drug charges.  Mr. Grasher knew, in June 2011, that the immigration consequences of pleading guilty to a drug delivery charge under state law were clear, and that [United States Immigration and Customs Enforcement] could and likely would initiate removal proceedings after the Defendant completed his sentence.  He communicated these consequences to the Defendant before he entered his guilty plea before this Court.

8.    On June 8, 2011, the Defendant attended the plea hearing and was assisted by a Spanish interpreter.  During the hearing, the Defendant informed the Court that the Statement of Defendant on Plea of Guilty had been translated in its entirety in Spanish for him before he had signed it.  He was clearly advised, before pleading guilty, that if he was not a U.S. citizen, a guilty plea "is grounds for deportation" from the United States.  He stated, on the record, that he understood this consequence of pleading guilty.  The prosecutor followed up with the question "We don't

know for sure what the immigration consequences will be. Do you still wish to proceed with entering a plea of guilty?" The Defendant said yes.

ANALYSIS

Osorio-Nicolas contends the court erred in denying his motion to withdraw his guilty plea and vacate the judgment and sentence. Under CrR 4.2(f), a court must allow withdrawal of a guilty plea if "necessary to correct a manifest injustice." An involuntary plea constitutes a manifest injustice. State v. Wakefield, 130 Wn.2d 464, 472, 925 P.2d 183 (1996).

We review denial of a motion to withdraw a guilty plea for abuse of discretion. State v. Marshall, 144 Wn.2d 266, 280, 27 P.3d 192 (2001). A trial court abuses its discretion when it bases its decision on untenable grounds or reasons. State v. Nguyen, 131 Wn. App. 815, 819, 129 P.3d 821 (2006).

Ineffective assistance of counsel can render a plea involuntary and unintelligent. State v. Sandoval, 171 Wn.2d 163, 169, 249 P.3d 1015 (2011). In order to prevail on a claim of ineffective assistance of counsel, Osorio-Nicolas must demonstrate (1) deficient performance and (2) prejudice. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. Bowerman, 115 Wn.2d 794, 808, 802 P.2d 116 (1990) (adopting the standards in Strickland). If a defendant fails to establish either prong, we need not inquire further. State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

Where the trial court has weighed the evidence, our role is to determine whether substantial evidence supports the findings of fact and, if so, whether the findings in turn support the conclusions of law. State v. Hill, 123 Wn.2d 641, 647, 870 P.2d 313 (1994); State v. Crane, 105 Wn. App. 301, 305-06, 19 P.3d 1100 (2001). Substantial evidence

is evidence that " 'persuade[s] a fair-minded person of the truth of the declared premises.' " State v. Jeannotte, 133 Wn.2d 847, 856, 947 P.2d 1192 (1997) (quoting Olmstead v. Dep't of Health, Med. Section, 61 Wn. App. 888, 893, 812 P.2d 527 (1991)). Unchallenged findings are verities on appeal. Hill, 123 Wn.2d at 644.

A constitutionally competent defense attorney must advise a defendant about the immigration consequences of entering into a guilty plea. Padilla v. Kentucky, 559 U.S. 356, 367, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). In Sandoval, our supreme court held that "[i]f the applicable immigration law 'is truly clear' that an offense is deportable, the defense attorney must correctly advise the defendant that pleading guilty to a particular charge would lead to deportation." Sandoval, 171 Wn.2d at 170 (quoting Padilla, 559 U.S. at 369).

It is clear that a conviction for delivery of methamphetamine in violation of the Uniform Controlled Substances Act results in deportation. State v. Martinez, 161 Wn. App. 436, 441-42, 253 P.3d 445 (2011). "Any alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). Possession of a controlled substance with intent to deliver is an "aggravated felony." 8 U.S.C. § 1101(a)(43)(B).

Osorio-Nicolas challenges the finding that his testimony that his attorney "told him that he would not be deported and that he had nothing to worry about by pleading guilty" was not credible. Osorio-Nicolas asserts that nothing in the record contradicts his testimony.

Contrary to his assertion, Grasher's testimony directly contradicts Osorio-Nicolas and supports the court's findings that Osorio-Nicolas was informed of the immigration

consequences of a guilty plea. Grasher testified that he discussed the immigration consequences of the charges with Osorio-Nicolas on several occasions. We defer to the trial court on the question of witness credibility. State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). Grasher testified that he had multiple conversations with Osorio-Nicolas in which they discussed the immigration consequences of entering into a guilty plea and that "[Osorio-Nicolas] was aware of the fact that, no matter what happened, whether it was a plea or a trial, that he would be deported."[2]

We affirm the trial court's order denying defendant's motion to withdraw the plea and vacate the judgment and sentence.

WE CONCUR:

---

[2] Unlike in Sandoval and Martinez, the record shows that Grasher expressly informed Osorio-Nicolas of the immigration consequences of entering into a guilty plea and that entering into the plea would result in his deportation.