# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Detention of | ) |
| | ) No. 69626-2-I |
| MICHAEL PITTMAN, | ) |
| | ) DIVISION ONE |
| Appellant. | ) |
| | ) UNPUBLISHED OPINION |
| | ) |
| | ) FILED: March 10, 2014 |

GROSSE, J. — Michael Pittman challenges his commitment as a sexually violent predator (SVP) under chapter 71.09 RCW. He claims that he received ineffective assistance of counsel during his commitment hearing because his attorney failed to object to a jury instruction permitting the jury to find that Pittman was likely to engage in acts of indecent liberties upon an incapacitated victim. The State concedes that this instruction misstated the law and that counsel's performance was deficient in failing to object to this instruction. Because Pittman fails to show that counsel's deficient performance prejudiced him, we affirm.

## FACTS

In 1997, Pittman, who was 32 years old at the time, befriended the family of an 11-year-old boy. Pittman took the boy to a secluded area, and after drinking alcohol and playing a "farting game" with the boy, fellated the boy while masturbating. When police arrested Pittman, they found clippings in his wallet depicting boys in the same age range. On April 7, 1999, a jury convicted Pittman

of rape of a child in the first degree. The court sentenced him to 147 months of confinement.

On September 10, 2010, shortly before Pittman's release date, the State filed a petition alleging that Pittman is an SVP as defined in chapter 71.09 RCW. On November 22, 2010, the court ordered him transported to the Special Commitment Center on McNeil Island.

Dr. Lyne Piche, a licensed psychologist who specialized in evaluating sex offenders, conducted SVP evaluations of Pittman. To evaluate Pittman, she reviewed his criminal history, health information, court documents, and documents from the Department of Corrections. She also spoke with his caseworker and reviewed past psychiatric and psychological assessments. Piche also interviewed Pittman.

Piche found that Pittman suffers from pedophilia and antisocial personality disorder that cause him serious difficulty controlling his sexually violent behavior and make him more likely to engage in predatory acts of sexual violence unless he is confined in a secure facility. In forming her opinion, Piche considered information related to Pittman's 1999 conviction and also documentation related to two instances of reported but unadjudicated instances of Pittman's sexual misconduct with young boys that occurred between 1990 and 1993.

In one instance, after offering to provide a 12-year-old boy with drugs and alcohol, Pittman played a "farting game" with the boy and asked the boy to rub his penis on Pittman while Pittman masturbated. The State charged him with child molestation in the second degree, but he was not convicted.

2

In another instance, Pittman befriended the family of a 10-year-old boy. While babysitting the boy, Pittman entered his room and fondled his genitals while the boy pretended to sleep. This occurred about two times per week for approximately one year. Police investigated this incident, which the boy did not report until he was 17 or 18 years old, but the State did not charge Pittman.

To form her opinions, Piche also relied upon Pittman's behaviors while in prison. Despite a court order prohibiting Pittman from contacting minors, developing relationships with females with minor children, or possessing any depictions of minors, Pittman kept photographs in his cell depicting minor males, contacted females in the community to ask about their children, and requested cell moves to live with younger inmates. He kept a scrapbook that he made containing photographs of children ages 5 to 14, articles about missing children, child movie characters, nude photographs of children, and photographs from advertisements for children's underwear. He kept a book with the "basic subject" of "baby rape and child rape." Pittman also sought pamphlets from a children's museum that depicted children walking through the museum. He also received in the mail, packages from organizations that contained photographs of children. Additionally, Pittman kept city maps in his cell color coded to indicate the locations of daycare centers, Head Start programs, and elementary schools. Pittman wrote letters to a woman with two small children, asking about the children's ages, what the children looked like, what clothing they liked to wear, and the types of activities they enjoyed. Further, he kept materials from the North American Man/Boy Love Association, a photograph depicting an

3

elementary school class, and a drawing depicting a nude adult male and a young boy embracing. Pittman received routine sanctions for possessing these materials.

Piche also considered Pittman's behavior while he stayed at the Special Commitment Center after the State filed the SVP petition and he awaited trial. He kept cutout pictures of children ages 8 to 12, pictures of families, pictures of children "spending the night over in sleeping bags," a phonebook containing depictions of minors, and drawings depicting "vaginas and penises on a fence," and also a drawing depicting a man holding a gun. He also kept magazine clippings depicting young boys and index cards containing information about child actors. A security guard observed Pittman watching and replaying movie scenes depicting adolescents.

To determine if Pittman was likely to engage in predatory acts of sexual violence if not confined to a secure facility, Piche assessed Pittman's risk using two actuarial instruments that provided a baseline indication of recidivism risk. Considering the results of the actuarial instruments, as well as dynamic risk factors and psychopathy, Piche concluded that Pittman's risk to reoffend was high and that he met the criteria for commitment as an SVP.

Pittman presented no witnesses, nor did he testify at trial. On November 8, 2012, a jury found that the State proved beyond a reasonable doubt Pittman is an SVP. The court entered an order committing Pittman to the Special Commitment Center.

Pittman appeals.

4

ANALYSIS

Indecent liberties requires proof that a person "knowingly causes another person who is not his or her spouse to have sexual contact with him or her or another . . . [b]y forcible compulsion"[1] or "[w]hen the other person is incapable of consent by reason of being mentally defective, mentally incapacitated, or physically helpless."[2] Forcible compulsion is "physical force which overcomes resistance, or a threat, express or implied, that places a person in fear of death or physical injury to herself or himself or another person, or in fear that she or he or another person will be kidnapped."[3]

Pittman claims that he received ineffective assistance of counsel because defense counsel failed to object to jury instruction 15, which defined indecent liberties by forcible compulsion:

> A person commits the crime of indecent liberties by forcible compulsion when he knowingly causes another person who is not his spouse to have sexual contact with him or another by forcible compulsion, or when the other person is incapable of consent by reason of being mentally defective or mentally incapacitated, or when the other person is incapable of consent by reason of being physically helpless.[4]

---

[1] Former RCW 9A.44.100(1)(a) (2007).

[2] Former RCW 9A.44.100(1)(b) (2007).

[3] RCW 9A.44.010(6).

[4] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 49.01, at 182 (3d ed. Supp. 2011) states:
A person commits the crime of indecent liberties when he or she knowingly causes another person who is not [his] [her] spouse or registered domestic partner to have sexual contact with [him] [her]
[by forcible compulsion] [or]
[when the other person is incapable of consent by reason of being mentally defective or mentally incapacitated] [or]
[when the other person is incapable of consent by reason of being physically helpless][.]

5

Pittman asserts,

> The court's instruction is an erroneous statement of the law. Because only indecent liberties by forcible compulsion is "sexual violence," the single sentence that makes up instruction 15 should have ended before the first "or." By expanding the types of conduct that make up indecent liberties by forcible compulsion, the trial court improperly lessened the State's burden of proving Pittman was "likely to engage in predatory acts of sexual violence if not confined in a secure facility."
>
> Stated another way, the expanded definition of forcible compulsion gave the jury the option of finding Pittman was likely to engage in acts of indecent liberties upon an incapacitation victim, which would not be possible under the more narrow definition.

Claims of ineffective assistance of counsel are mixed questions of law and fact, which we review de novo.[5] To prevail, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness based on a consideration of all the circumstances and (2) that the deficient performance prejudiced the trial.[6] The reasonableness inquiry presumes effective representation and requires the defendant to show the absence of legitimate strategic or tactical reasons for the challenged conduct.[7] To show prejudice, the defendant must prove that but for the deficient performance, there is a reasonable probability that the outcome would have been different.[8] Sufficient

---

[5] In re Pers. Restraint of Fleming, 142 Wn.2d 853, 865, 16 P.3d 610 (2001). Generally, when an appellant did not object at trial, we will not consider an alleged instructional error unless the appellant first demonstrates that the error is a "manifest error affecting a constitutional right." RAP 2.5(a)(3). But because Pittman also argues that his trial counsel was ineffective for failing to object to this instruction, we address these arguments regardless of whether they are manifest errors affecting a constitutional right. See State v. Gerdts, 136 Wn. App. 720, 726, 150 P.3d 627 (2007).

[6] State v. Nichols, 161 Wn.2d 1, 8, 162 P.3d 1122 (2007).

[7] State v. McFarland, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995).

[8] In re Pers. Restraint of Pirtle, 136 Wn.2d 467, 487, 965 P.2d 593 (1998).

jury instructions permit each party to argue its theory of the case and properly inform the jury of the applicable law.[9]

The State concedes that the challenged instruction misstated the law and that defense counsel's performance was deficient because he failed to object to this erroneous instruction. Pittman does not challenge any of the court's other jury instructions.

Pittman alleges that counsel's deficient performance prejudiced his trial because Pittman "purportedly showed a willingness to repeatedly fondle a boy who at least appeared physically helpless." He cites State v. Puapuaga,[10] in which we held that a sleeping victim is "physically helpless" for the purpose of establishing the crime of indecent liberties.

Piche testified, "My opinion is that, yes, that the likelihood of future offending would likely parallel past offending which had to do with Mr. Pittman getting to know families with young boys, spending time with boys, and working towards sexually offending them." The court provided a limiting instruction to the jury not to consider for the truth of the matters asserted the underlying file information that Piche cited, but only to determine her credibility.

Pittman claims, "The court's improperly expanded definition of indecent liberties by forcible compulsion added weight to Piche's opinion regarding likelihood of reoffense. Additionally, regardless of the limiting instruction, it is

---

[9] State v. Riley, 137 Wn.2d 904, 909, 976 P.2d 624 (1999) (quoting State v. Bowerman, 115 Wn.2d 794, 809, 802 P.2d 116 (1990)).
[10] 54 Wn. App. 857, 860, 776 P.2d 170 (1989).

reasonable to believe the details of the purported molestation of the 'sleeping' boy influenced the jury to Pittman's detriment."

Pittman fails to show that the outcome of his trial would have been different if counsel objected to the improper jury instruction. The State presented overwhelming evidence of Pittman's ongoing fascination with young males, even while incarcerated. At trial, Pittman presented no evidence that he had an interest in sexual contact with adults who were mentally defective, mentally incapacitated, or physically helpless. And neither party at any point argued that if released, he was likely to reoffend in this manner.

During closing arguments, neither party referenced the improper jury instruction, or otherwise suggested that Pittman was likely to reoffend by having sexual contact with a mentally defective, mentally incapacitated, or physically helpless person. And despite the improper instruction, Pittman was able to argue his theory of the case that the instruments and information upon which Piche relied were not reliable. Because Pittman fails to show a reasonable probability that but for defense counsel's deficient performance, the outcome would have been different, he fails to establish ineffective assistance of counsel.

## CONCLUSION

Because Pittman fails to show a reasonable probability that but for his attorney's deficient performance in failing to object to the court's improper jury

instruction, the outcome of his trial would have been different, we affirm.

WE CONCUR: