# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57530-2-II |
| Respondent, | |
| v. | |
| JASHAWN DEMEATRUS MCGHEE, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — Jashawn Demeatrus McGhee shot Keith Rogers multiple times as a result of an argument that ensued between the two in a parking lot. A jury found McGhee guilty of attempted murder in the first degree and drive-by shooting. McGhee appeals his conviction and sentence, alleging several errors at the trial court level. McGhee asks us to reverse the convictions and remand for dismissal of the two counts, a new trial, or resentencing.

We hold that the errors alleged are without merit and affirm McGhee's conviction and sentence.

## FACTS

### I. BACKGROUND

In November, 2019, Keith Rogers went out drinking with friends at a bar. Rogers had been arguing with his girlfriend, Crescenda (CiCi) Banks. According to testimony, Rogers was under the impression that Banks was cheating on him, and he became angry. Rogers grabbed Banks's phone out of her hands so he could look at her texts and would not give it back to her. This set off several altercations between Rogers and Banks in the parking lot outside the bar, some of which

were captured on nearby surveillance videos. After the initial argument with Banks, Rogers went to his car where he attempted to retrieve his unloaded handgun from under the seat. But, he dropped it and left it under the seat.

Later that evening, McGhee was on his break from work. He drove through the parking lot of the bar trying to talk to women who were heading home after last call. McGhee engaged Banks and her friend, Felicia Edwards, in conversation. After a few minutes, Edwards got in Banks's gray Chevy, and they left the parking lot. The women pulled over in the Domino's parking lot next door to wait for Rogers. McGhee, believing the women were interested in him, pulled up beside them so that the driver's side windows were across from each other. McGhee asked the women to leave with him. Banks ignored him, calling out to Rogers, "Let's go home." 3 Rep. of Proc. (RP) at 348.

Rogers drove into the Domino's parking lot where Banks was waiting for him and pulled in behind McGhee's car. Banks would later admit that she was concerned and knew that if she talked to McGhee "it would set [Rogers] off even more." 5 RP at 391-92.

McGhee threatened to "pop off" on Rogers because he worried Rogers would interrupt his conversation with Edwards and Banks.[1] 3 RP at 350. Banks interpreted this as a threat to shoot Rogers, and responded: "You're not going to do none of that." 3 RP at 352. Edwards also interpreted the statement as a threat to shoot, and testified that Rogers responded that he too had a gun. Rogers testified he had not heard the verbal threat, but did see McGhee pull out a gun. In response to McGhee pulling out a gun, Rogers said, "I got my [concealed pistol license] too." 5 RP at 473.

---

[1] According to Banks, McGhee made this comment before Rogers arrived. Edwards, however, thought McGhee had made the comment within earshot of Rogers.

The evidence as to what occurred next is conflicting. Rogers testified that at this point, McGhee had pulled his car out, spun around, braked, and pointed his gun at Rogers. Rogers went to his Jeep to get his own gun, and had just put his hand on it when McGhee started firing. Rogers estimated that McGhee shot 10 or 11 times. Rogers was shot through the forearm and several times in the torso, resulting in several injuries.

McGhee fled. Soon after, he began to call and text Edwards repeatedly asking if she was all right. McGhee then returned to work, clocking in at 1:52 AM. Later that day, the police came to McGhee's home and arrested him. He told the officers where his gun was located and gave a statement at the police station. Police were able to restore the scratched off serial number and determine the weapon was registered to McGhee's wife. McGhee admitted the gun belonged to him and that it was a gift from his wife.

When interviewed by the police, McGhee claimed that Rogers had perceived him as a sexual rival. He said that Rogers drove up, approached McGhee's vehicle, and began an argument with him. McGhee said he drove away but circled back immediately in order to try to talk Rogers down. McGhee told the police that Rogers threatened to kill him and then began to walk back to his Jeep, which is when McGhee opened fire. He explains that he did this to "stop the threat" before Rogers could retrieve a gun from his car. Ex. 287, at 12.

McGhee also told the police that he was afraid because of how Rogers drove up to him, got out of his car, and approached him. McGhee told the officers "[he] thought [he] was gonna get shot in the head . . . because how [Rogers] was walking to [McGhee's] car," Ex. 156B, at 29:11-29:16, and "was just scared [Rogers] was gonna f*** [him] up." Ex. 156B, at 31:18-31:20. He was also afraid Rogers would follow him to his home, which was around the corner.

Throughout their interrogation of McGhee, the detectives asked him why he did not just leave the area, repeatedly offered that he had ways to leave, but chose to turn his car around and pull his gun. One detective asked McGhee, "Why didn't you leave? Why didn't you just get the f*** out of there? Why did you have to stay . . . and keep going." Ex. 156B, at 18:30-18:35. "And then you dumped on him while he was outside the car when even at that point you could have just said this is stupid and drove off." Ex. 156B, at 27:13-27:20. "But when you made that initial turn to actually come back, if you would've just kept going, you would've driven right out to Hipkins. You would've went right out, egressed and been gone. If you just said, 'F*** it. I'm out. It's not worth it.'" Ex. 156B, at 31:01-31:13. Portions of this interview with police were published to the jury at trial.

On November 18, 2019, the State charged McGhee with attempted murder in the first degree while armed with a firearm (count 1), assault in the first degree while armed with a firearm (count 2), and drive-by shooting (count 3). The case was tried to a jury.

II.     PRETRIAL MOTION

Prior to trial, McGhee moved in limine for the exclusion of "testimony that there was an attempt at some point to obliterate the serial numbers on the firearm at issue." Clerk's Papers (CP) at 37-38. The State argued that the attempt to obliterate the serial number was admissible as consciousness of guilt. The defense did not object to the testimony that the serial number was partially scratched off but objected to further testimony as to who did this and what their motivations may have been, raising objections under ER 403, 602, and 801-804. The court ruled that the State could introduce evidence that someone tried to obliterate the serial number and that if a number is obliterated it makes it harder for law enforcement to trace the gun. The court also ruled that the State could argue consciousness of guilt in closing argument but could not introduce

testimony to that effect. In closing, the State argued "that filing off the serial number so it can't be traced is consciousness of guilt and not an act of self-defense." 8 RP at 701. Defense counsel did not object to this argument.

III.    AGGRESSOR INSTRUCTION

The State proposed an aggressor instruction modeled on Washington Pattern Jury Instruction 16.04. *See* 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 16.04, at 241 (3d. ed. 2008) (WPIC). McGhee's attorney objected to the instruction, saying that the State was "proposing the standard WPIC, so it's not the language of it" but rather "the giving of it." 8 RP at 675. The trial court noted the objection, ruling "I'm going to give it." 8 RP at 675. The instruction was given to the jury as instruction 43, and provided:

> No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense and thereupon kill or use force upon or toward another person. Therefore, if you find beyond a reasonable doubt that the defendant was the aggressor, and that defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense.
> Words alone are not adequate provocation for the defendant to be the aggressor.

CP at 263.

IV.    TRIAL

Banks testified at trial that McGhee said, "If [Rogers] comes over with that, I'm going to pop off on him." 3 RP at 349. The State asked if she knew what he meant by that, to which she answered, "Yes, I did." 3 RP at 351. Defense counsel then objected based on speculation. The court allowed the response, stating, "She can testify to her impression." 3 RP at 351. Banks elaborated that "normally, when you say you're going to pop off someone, that means you're going to shoot them." 3 RP at 351.

Later, Edwards testified that she also heard McGhee say "he was going to pop one off on [Rogers]" and that to her, the statement means that "you're going to shoot somebody." 5 RP at 416-17. Defense counsel did not object. Footage of the police detective's interview with McGhee was shown to the jury.

In closing argument,[2] the State focused on instruction 43, telling the jury:

> [Y]ou can't chase after somebody with a knife in your hand and when that person turns around and shoots you claim self-defense. That kind of goes to the first aggressor portion.
>     Ladies and gentlemen, it really starts and ends with this, and that is Jury Instruction No. 43. Self-defense is not available period if your act provokes a belligerent response, thus creating the necessity for you to act in self-defense. . . . Self-defense is not an available defense if you are the first aggressor in the state of Washington.

8 RP at 696-97.

The jury returned verdicts of guilty on all counts. The court vacated the assault, finding it merged with the attempted murder, and imposed a total of 270 months' incarceration. The parties agreed on the offender score. McGhee appeals.

ANALYSIS

Given the volume of arguments McGhee put forth, we organize them under five major headings addressing in order the aggressor instruction, alleged evidentiary errors, alleged prosecutorial misconduct, sufficiency of the evidence, and finally the offender score calculation.

---

[2] The State made several arguments in closing that are covered in more detail in the analysis below. There were no objections made to these arguments.

I.        AGGRESSOR JURY INSTRUCTION

McGhee argues that the trial court erred by giving jury instruction 43, an "aggressor" instruction. McGhee claims that the instruction was not supported by the evidence in this "unique factual scenario," and that it was unconstitutional because it undercut his right to use force to defend himself. Br. of Appellant at 22. We hold that because there is conflicting evidence as to whether McGhee's conduct precipitated the fight, and viewing the evidence in the light most favorable to the State (the requesting party), the facts support giving the instruction.

A.        Standard of Review

"'Jury instructions are sufficient if they permit each party to argue his theory of the case and properly inform the jury of the applicable law.'" *State v. Riley*, 137 Wn.2d 904, 909, 976 P.2d 624 (1999) (internal quotation marks omitted) (quoting *State v. Bowerman*, 115 Wn.2d 794, 809, 802 P.2d 116 (1990)). Whether there was sufficient evidence to justify a jury instruction is a question of law that is reviewed de novo, looking at the evidence in the light most favorable to the requesting party. *State v. Sullivan*, 196 Wn. App. 277, 289, 383 P.3d 574 (2016).

When determining if the evidence at trial was sufficient to support the giving of an instruction, we view the supporting evidence in the light most favorable to the party that requested the instruction. *State v. Fernandez-Medina*, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000). To support an aggressor instruction, there must be evidence that the defendant engaged in an intentional act, separate from the assaultive conduct, that precipitated the incident and was reasonably likely to provoke a belligerent response. *State v. Wasson*, 54 Wn. App. 156, 159, 772 P.2d 1039 (1989).

B.      The Right to Self-Defense

The use of force is lawful and justified where the defendant has a "subjective, reasonable belief of imminent harm from the victim." *State v. LeFaber*, 128 Wn.2d 896, 899, 913 P.2d 369 (1996), *abrogated on other grounds by State v. O'Hara*, 167 Wn.2d 91, 217 P.3d 756 (2009). "The evidence of self-defense must be assessed from the standpoint of the reasonably prudent person standing in the shoes of the defendant, knowing all the defendant knows and seeing all the defendant sees." *Riley*, 137 Wn.2d at 909. If the defendant meets the "initial burden of producing some evidence that his or her actions occurred in circumstances amounting to self-defense," then the State has the burden to prove the absence of self-defense beyond a reasonable doubt. *Id*. at 909, 910 n.2.

However, the right of self-defense cannot be successfully invoked by an aggressor or one who provokes an altercation. *Id*. at 909. "[T]he reason one generally cannot claim self-defense when one is an aggressor is because 'the aggressor's victim, defending himself against the aggressor, is using lawful, not unlawful, force; and the force defended against must be unlawful force, for self-defense.'" *Id*. at 911 (quoting 1 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 5.7, at 657-58 (1986)). "[A]n aggressor instruction impacts a defendant's claim of self-defense," so "courts should use care in giving an aggressor instruction." *Id*. at 910 n.2. However, aggressor instructions should be given where called for by the evidence. *Id*.

Where there is credible evidence from which a jury can reasonably determine that the defendant provoked the need to act in self-defense, an aggressor instruction is appropriate.[3] *State v. Hughes*, 106 Wn.2d 176, 191-92, 721 P.2d 902 (1986). If there is credible evidence that the defendant made the first move by drawing a weapon, the evidence supports the giving of an aggressor instruction. *State v. Thompson*, 47 Wn. App. 1, 7, 733 P.2d 584 (1987).

In addition to the above, *Riley* held that where there is credible evidence from which a jury can reasonably determine that the defendant provoked the need to act in self-defense, an aggressor instruction is appropriate. 137 Wn.2d at 909-10. In *Riley*, evidence at trial suggested that the defendant drew his gun first and aimed it at the victim. *Id.* at 909. The court concluded that an aggressor instruction was proper because it directed the jury to decide whether Riley's conduct precipitated a confrontation with the victim. *Id.* at 913-14. In allowing the instruction, the *Riley* court approved the language of longstanding WPIC 16.04, the very instruction used in the case before us. *Id.*

The court in *State v. Grott* applied the *Riley* standard. 195 Wn.2d 256, 458 P.3d 750 (2020). In that case, the defendant fired several shots before the victim realized the defendant was there. *Id.* at 273. At trial, the jury was presented with credible evidence from which it could reasonably determine that the defendant provoked the need to act in self-defense. *Id.* at 273. The court in *Grott* determined that the *Riley* standard was met and the instruction was warranted, because there was "substantial, conflicting" and "credible evidence from which a jury can reasonably determine that the defendant provoked the need to act in self-defense." *Id.* at 269, 273. *Grott* refined the

---

[3] Neither party discusses whether "credible evidence" is akin to "some evidence" as is the clarified standard in other affirmative defense contexts. *See State v. Arbogast*, 199 Wn.2d 356, 371, 506 P.3d 1238 (2022).

*Riley* standard, holding that where there is credible yet conflicting evidence as to what preceded the incident in question, an aggressor instruction is proper. *Id.*

C.      The Court Correctly Instructed the Jury as to the Law on Aggressors

The evidence supported giving the aggressor instruction in this case. This is because there is credible yet conflicting evidence as to whose behavior precipitated the fight. McGhee claims "that when [he] pulled out his gun, he was acting in lawful self-defense against a violent, angry and intoxicated person who was armed with his own gun" and "that when [Rogers] threatened him and began reaching for his gun, McGhee again acted in self-defense and shot at Rogers before Rogers could kill him." Br. of Appellant at 22. On the other hand, there is evidence that Rogers ran for his gun only after McGhee pointed a gun at him and began shooting. McGhee's argument details the conflicting facts regarding who the initial aggressor was. But ultimately, this is precisely the point; rather than obviating the need for an aggressor instruction, McGhee's argument underscores that there was in fact conflicting evidence. The argument does not nullify the other credible evidence in the record from which a jury could conclude McGhee was the aggressor. It was proper to give the instruction.

McGhee also suggests the aggressor instruction is improper because it is judicially created. But McGhee stops short and fails to articulate what precisely about the instruction is improper. His argument fails.

D.      Constitutionality of Instruction

McGhee argues that instruction 43 was unconstitutionally vague and diminished the State's burden of proof, violating McGhee's right to defend himself. We disagree.

The State has the burden to prove the absence of self-defense beyond a reasonable doubt. *State v. Acosta*, 101 Wn.2d 612, 615-23, 683 P.2d 1069 (1984). "'Jury instructions must more than adequately convey the law of self-defense.'" *State v. Ackerman*, 11 Wn. App. 2d 304, 313, 453 P.3d 749 (2019) (quoting *State v. Corn*, 95 Wn. App. 41, 52-53, 975 P.2d 520 (1999)). The instructions "'must make the relevant legal standard manifestly apparent to the average juror.'" *Id.* (quoting *Corn*, 95 Wn. App. at 53). Additionally, we presume that the jurors followed the trial court's instructions and read the instructions as a whole to discern the relevant legal standard. *State v. Weaver*, 198 Wn.2d 459, 467, 496 P.3d 1183 (2021).

Instruction 43 reads in part, "if you find beyond a reasonable doubt that the defendant was the aggressor, and that defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense." CP at 263.

McGhee makes three arguments in his challenge to the wording of instruction 43: (1) the instruction interfered with his statutory and constitutional rights to self-defense, (2) the instruction allows lawful intentional acts to be considered those that are "likely to provoke a belligerent response" and thereby make self-defense unavailable, and (3) the instruction's language is deficient because of the lack of a tie to the "to convict" instructions, or to the instructions setting out when force is justifiable or lawful. Br. of Appellant at 35, 39.[4] However, at trial, McGhee lodged a non-specific objection to the standard first aggressor jury instruction. In fact, at trial,

---

[4] McGhee arguably makes other more difficult to differentiate arguments, but we do not list them here due to our conclusion that any objection to the wording of the instruction was unpreserved.

McGhee explicitly told the judge he was not objecting to the language of the aggressor instruction.[5, 6]

We decline to address these arguments because McGhee expressly objected to the giving of the instruction, but only now on appeal takes issue with the wording thereof. He failed to preserve for review any arguments regarding the language of the instruction.

Moreover, McGhee does not make a persuasive argument under RAP 2.5 that would nevertheless support our review of this unpreserved issue. Instead, he argues that the instruction generally violates his due process rights because it "unconstitutionally diminished the State's burden of proof and violated [his] right to defend himself." Br. of Appellant at 33. McGhee makes a general assertion that the "practical and identifiable consequence on the trial by the vague aggressor instruction" was "the lessening of the burden of proof and the interference with the right to use self-defense." Br. of Appellant at 41. But, even assuming constitutional error, his argument does not overcome the reality that the jury instructions are read as a whole. *Weaver*, 198 Wn.2d at 467. Here, the trial court instructed the jury at least four times of the State's "beyond a reasonable doubt" burden. *See* CP at 223, 258, 259, 263. The burden applied to the elements and to the absence of self-defense for each offense. And the court instructed that self-defense only becomes unavailable if the jury finds "beyond a reasonable doubt" that the defendant was the first aggressor. CP at 263.

---

[5] In the report of proceedings, the discussion was as follows:
> MR. TRUJILLO: . . . They're proposing the standard WPIC, so it's not the language of it.
> THE COURT: It's the giving of it?
> MR. TRUJILLO: Yes.

8 RP at 675.

[6] Additionally, McGhee clarified at oral argument this was the case.

McGhee has not shown that the error was manifest and can be raised for the first time on appeal under RAP 2.5(a)(3), and because arguments regarding the language of the instruction are otherwise unpreserved, we decline to review this issue.

## II.    ALLEGED EVIDENTIARY ERRORS

McGhee appeals several evidentiary errors. Specifically, that the trial court erred by: allowing evidence that McGhee's gun had a partially obscured serial number, admitting testimony as to what McGhee meant by the term "pop off," and admitting improper opinion evidence by the investigating police detectives. All of these arguments fail.

### A.    Standard of Review

We review evidentiary errors under an abuse of discretion standard. *Cox v. Spangler*, 141 Wn.2d 431, 439, 5 P.3d 1265, 22 P.3d 791 (2001). "A trial court has 'broad discretion in ruling on evidentiary matters and will not be overturned absent manifest abuse of discretion.'" *Id.* (quoting *Sintra, Inc. v. City of Seattle*, 131 Wn.2d 640, 662-63, 935 P.2d 555 (1997), *abrogated on other grounds by Yim v. City of Seattle*, 194 Wn.2d 682, 451 P.3d 694)). "'Discretion is abused when the trial court's decision is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons.'" *State v. Slater*, 197 Wn.2d 660, 667, 486 P.3d 873 (2021) (quoting *State v. Blackwell*, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993)). An abuse of discretion also occurs when the trial court takes a view no reasonable person would take or applies the wrong legal standard to an issue. *Cox*, 141 Wn.2d at 439.

### B.    Preservation of Issues on Appeal

Evidentiary objections must be preserved if they are to be reviewed on appeal. *State v. Mason*, 160 Wn.2d 910, 933, 162 P.3d 396 (2007) (an objection based on relevance does not preserve an objection on grounds of prejudice); *see also State v. O'Hara*, 167 Wn.2d 91, 98-99,

217 P.3d 756 (2009) (the general rule that an assignment of error be preserved includes an exception when the claimed error is a "manifest error affecting a constitutional right").

A party may assign evidentiary error on appeal only on a specific ground made at trial. *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). ER 103(a)(1) provides that a party cannot appeal an evidentiary ruling unless that party made a "timely objection or motion to strike" at trial "stating the specific ground of [the] objection" if not apparent from context. *State v. Roosma*, 19 Wn. App. 2d 941, 948, 498 P.3d 59 (2021).

The purpose underlying the insistence on issue preservation is to encourage "the efficient use of judicial resources." *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988). Issue preservation serves this purpose by ensuring that the trial court has the opportunity to correct any errors, thereby avoiding unnecessary appeals. *State v. Robinson*, 171 Wn.2d 292, 304-05, 253 P.3d 84 (2011). "For example, a trial court may strike testimony or provide a curative instruction to the jury." *Kirkman*, 159 Wn.2d at 926. However, a claim of error may be raised for the first time on appeal if it is a manifest error affecting a constitutional right. RAP 2.5(a)(3); *State v. Walsh*, 143 Wn.2d 1, 7, 17 P.3d 591 (2001).

C.      Partially Obscured Serial Number

McGhee argues that the trial court erred when it allowed the State to use evidence that McGhee's gun had a partially obscured serial number. The State argues that this was admissible as to McGhee's consciousness of guilt, and that McGhee did not preserve error as to this claim. We hold that the issue is not preserved for appeal.

Prior to trial, McGhee moved in limine for the exclusion of "testimony that there was an attempt at some point to obliterate the serial numbers on the firearm at issue." CP at 37. Subsequently, McGhee appears to have withdrawn his motion, saying:

My motion isn't to conceal or to keep out the idea that the serial number was scratched. It was that someone had some kind of intent, an intent to obliterate, when that occurred.

The State is free to argue what others observed saying: "I looked at the serial number. It's scratched, or, apparently, obliterated." It's the testimony that someone made an attempt to do so because then there's speculation as to what that person was doing or thinking as to who that person was.

2 RP at 176.

McGhee maintained "you can't talk about the intent of someone that you did not see [ ] engaging in that activity." 2 RP at 179. The court ruled that the State could introduce evidence that someone tried to obliterate the serial number and that if a number is obliterated it makes it harder for law enforcement to trace the gun. The court further allowed that the State could argue that this suggested consciousness of guilt in closing argument but that the State could not introduce testimony to that effect.

Here, the defense did not object to the testimony that the serial number was partially obliterated, but did object to further testimony as to who obliterated it and what their motivations may have been, raising objections under ER 403, 602, and 801-04. The State did not introduce testimony as to who obliterated it, but did make the argument in closing that the partially obliterated number suggested consciousness of guilt as the trial court expressly allowed it to do. McGhee did not object to the argument in closing. In fact, McGhee's counsel also discussed the serial number in closing argument.

Because McGhee affirmatively withdrew his original motion and did not object to the State's comments in closing argument, the issue is not preserved for review here. However, we may nevertheless address the issue if McGhee shows that allowing this argument is a "manifest error affecting a constitutional right." RAP 2.5(a)(3). To show a manifest error, the appellant must identify a constitutional error and make a plausible showing that the asserted error had

practical and identifiable consequences at trial.  *Kirkman*, 159 Wn.2d at 935.  Exceptions to RAP 2.5(a) are to be construed narrowly.  *Id*.  McGhee has made no such showing, instead plainly describing this as an evidentiary error.  The issue is not preserved and we decline to reach it.

D.      Testimony as to the Meaning of "Pop Off"

McGhee argues that the trial court erred because it admitted speculation as to what he meant by the term "pop off."  The State argues that the trial court properly permitted testimony as to Banks's and Edwards's understanding about a conversation in which they participated.  We agree with the State.

Assuming without deciding that the issue was preserved for appeal, the trial court properly allowed the testimony.  Lay witnesses may give opinions or inferences based on rational perceptions that help the jury understand the testimony and that are not based on scientific or specialized knowledge.  ER 701.  A lay person's observation of intoxication is an example of a permissible lay opinion.  *State v. Montgomery*, 163 Wn.2d 577, 591, 183 P.3d 267(2008).  Banks and Edward provided their own understanding of what the phrase "pop off" meant to them in the context in which it was said.  Their opinions are not "speculation" of what McGhee was thinking, but rather their interpretation of a phrase in a conversation in which they were participants.  McGhee argues that the phrase "pop off" can have more than one meaning.  Even assuming that is true, the trial court properly allowed Banks and Edwards to testify to how they each perceived the comment.

The trial court did not abuse its discretion in permitting the testimony.

E.      Police Detective's Opinions

McGhee argues that the trial court erred when it admitted footage of his interview with police that, according to McGhee, offered improper opinion testimony.  McGhee's claim fails.

16

Assuming without deciding that this issue was preserved on appeal, this claim fails on the merits. The detective did not make any direct comments or express an opinion as to McGhee's veracity or guilt. Rather, the detective asked a question in real time during the investigation: "Why didn't you leave? Why didn't you just get the f*** out of there? Why did you have to stay . . . and keep going" Ex. 156B, at 18:30-18:35. The detective did not proffer an opinion as to McGhee's guilt. McGhee has not identified impermissible opinion testimony. McGhee's claim fails.

III.    ALLEGED PROSECUTORIAL MISCONDUCT

McGhee takes issue with several comments the State made at trial.[7]   But, because McGhee's counsel failed to object to any of these comments, he waives the challenge on appeal.

---

[7] McGhee takes issue with the following comments:
- "The reason is because this chair is closest to you is because it's where all of the evidence comes from. . . . You saw transcripts that were used. You had some during the Defendant's testimony." 8 RP at 688.
- "That's not really in dispute that [Rogers] was shot. [McGhee] admitted to it in the interview." 8 RP at 689.
- "I suspect that the disagreement may come with the intent portion of it. So how do you know what someone is intending to do if they don't tell you exactly?" 8 RP at 689.
- "It's important to keep in mind that the Defendant has the right to a fair trial and that we have to prove every single element of the crime charged beyond a reasonable doubt, nothing less and nothing more. . . . The question that you need to ask yourself is do you have enough, not do you want more? You have enough." 8 RP at 688, 728.
- "The State suggests that based upon the facts of the case, [McGhee] fails on all three prongs because there has to be a reasonable belief." 8 RP at 695.
- "It fails on that one too because you can't chase after somebody with a knife in your hand and when that person turns around and shoots you claim self-defense. That kind of goes to the first aggressor portion." 8 RP at 696.
- "[W]hat that means is like, 'Give me your money,' but I don't have a gun in my hand, so you weren't really in any actual danger of being shot in hindsight, and you act in self-defense. That's kind of what that's talking about. It's not, 'Well, maybe I overreacted.' That's not what this jury instruction is talking about, where someone comes up to you with a knife and it's just a prop knife. You're not in actual danger of been stabbed, but that's what that means." 8 RP at 702.

Br. of Appellant at 63-66.

Still, assuming without deciding that the comments were improper, they do not rise to the level of being so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice, and are therefore not grounds for reversal.

A.     Legal Principles

To establish prosecutorial misconduct, McGhee must prove that the prosecuting attorney's remarks were both improper and prejudicial. *State v. Allen*, 182 Wn.2d 364, 373, 341 P.3d 268 (2015). This determination is made in the context of the entire record and the circumstances at trial. *State v. Gregory*, 158 Wn.2d 759, 810, 147 P.3d 1201 (2006). When a prosecuting attorney misstates the law, this amounts to improper comment in the context of prosecutorial misconduct. *See Allen*, 182 Wn.2d at 373; *State v. Warren*, 165 Wn.2d 17, 28, 195 P.3d 940 (2008).

If we deem the remarks improper, we must then determine whether the defendant was prejudiced under one of two standards of review. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). "If the defendant objected at trial, the defendant must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict." *Id.* However, if the defendant failed to object, "the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Id.* at 760-61. Here, McGhee challenges the prosecutor's closing argument for the first time on appeal. Therefore, if we determine that the comments were improper, we must proceed under the heightened standard and ask whether the misconduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice.

B.     The Comments Do Not Meet the Heightened Standard, so McGhee Waived Error

Even if we assume without deciding that the comments were improper, the comments at issue fail to reach this heightened standard, so McGhee has waived any error.

As stated previously, McGhee did not object to any of the above comments at the trial. Therefore, McGhee has waived any error unless he can show that the comments were so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. *Id*. at 761. McGhee has not made this showing.

A reviewing court must consider what would likely have happened if the defendant had timely objected. *Id*. at 763. Here, a misstatement of the evidence, an incorrect statement of the defendant's admission, minimizing the burden of proof, and misleading comments could have been cured with a corrective instruction had McGhee made an objection, assuming they were improper in the first place.

Because McGhee failed to object at trial, and each comment could have been cured with an instruction, McGhee waived his challenge by failing to object below.

IV. SUFFICIENCY OF EVIDENCE TO SUSTAIN A CONVICTION FOR ATTEMPTED MURDER IN THE FIRST DEGREE

McGhee argues that there was insufficient evidence to sustain a conviction for attempted murder in the first degree. Specifically, McGhee asserts that the evidence of premeditation in this case is insufficient to meet the requisite standard. We disagree.

A. Standard of Review

The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

"A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Id*. "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *Id*. A reviewing

court defers to the trier of fact on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

> B. There was Sufficient Evidence of Premeditation to Sustain a Conviction

To convict McGhee of attempted murder in the first degree, the State had to prove he took a substantial step toward causing the death of Rogers and acted with the premeditated intent to kill Rogers. *State v. Price*, 103 Wn. App. 845, 851-52, 14 P.3d 841 (2000); RCW 9A.28.020(1); RCW 9A.32.030(1)(a). Premeditation requires proof of "'the deliberate formation of and reflection upon the intent to take a human life and involves the mental process of thinking beforehand, deliberation, reflection, weighing or reasoning for a period of time, however short.'" *State v. Hummel*, 196 Wn. App. 329, 354, 383 P.3d 592 (2016) (quoting *State v. Hoffman*, 116 Wn.2d 51, 82-83, 804 P.2d 577 (1991)).

When viewed in the light most favorable to the State and taken as true, a rational trier of fact could have found premeditation beyond a reasonable doubt. McGhee told Edwards and Banks that he was going to shoot Rogers if he came over. When Rogers came over, instead of leaving the scene, McGhee repositioned his car so he could easily flee after shooting, and giving him a better position from which to shoot. McGhee spun the vehicle around, slammed on the brakes and shot multiple times, striking Rogers with four rounds in his midsection and arms, very nearly killing him. Several of McGhee's rounds also struck Rogers's Jeep. Based on the foregoing, a rational trier of fact could have found premeditation beyond a reasonable doubt. There was sufficient evidence of premeditation; McGhee's insufficiency of the evidence claim fails.

## V. CALCULATION OF OFFENDER SCORE

McGhee argues that the trial court incorrectly calculated his offender score because under the State's theory, counts 1 and 3 constitute the same criminal conduct or double jeopardy.

20

McGhee asserts that if counts 1 and 3 were the same criminal conduct or if separate convictions violated double jeopardy, he would have had an offender score of 0 and the standard range for the attempted murder would be 180-240 months (plus 60 months for the firearm), not 210 and 24 months on counts 1 and 3 (with a 60 month firearm enhancement). We disagree.

Double jeopardy and same criminal conduct analyses are distinct and separate inquiries, and are analyzed separately below. *State v. French*, 157 Wn.2d 593, 611, 141 P.3d 54 (2006).

A.      Double Jeopardy

The Fifth Amendment to the United States Constitution and article I, section 9 of the Washington Constitution protect a defendant against multiple punishments for the same offense. *State v. Mutch*, 171 Wn.2d 646, 661, 254 P.3d 803 (2011). A double jeopardy claim may be raised for the first time on appeal. *Id.* We review double jeopardy claims de novo. *Id.* at 661-62; *State v. Sanford*, 15 Wn. App. 2d 748, 752, 477 P.3d 72 (2020).

In reviewing a double jeopardy claim, we first look to the language of the relevant statutes. *In re Pers. Restraint of Borrero*, 161 Wn.2d 532, 536-37, 167 P.3d 1106 (2007). If the statutory language does not disclose any legislative intent to impose multiple punishments for the offenses, we apply the same evidence test, which asks whether the offenses are identical in fact and in law. *Id.* "Under this test, double jeopardy principles are violated if the defendant is convicted of offenses that are identical in fact and in law." *Id.* at 537. But if each offense contains an element not contained in the other, requiring proof of a fact that the other does not, the offenses are not the same. *Id.*

McGhee argues that, where count 1 was only an attempt and not a completed crime, and where the drive-by shooting was the act that constituted the substantial step, the two counts constituted the same criminal conduct and conviction for both violates double jeopardy. McGhee does not identify whether or not the statutory language suggests a legislative intent to impose multiple punishments for the offenses.

Applying the same evidence test to the charges and evidence in this case weighs against concluding that double jeopardy prevents the multiple convictions. First, the elements are distinct. A drive-by shooting requires the reckless discharge of a firearm. *See* RCW 9A.36.045 (A drive-by shooting is committed when a person "recklessly discharges a firearm . . . in a manner which creates a substantial risk of death or serious physical injury to another person and the discharge is . . . from a motor vehicle."). Attempted murder requires specific intent. RCW 9A.32.030(1)(a); RCW 9A.28.020(1).

A drive-by shooting requires a shooting from a motor vehicle, attempted murder does not. *See* RCW 9A.36.045; RCW 9A.32.030(1)(a); RCW 9A.28.020(1)  Attempted murder requires a substantial step, premeditation, and an intent to kill, while drive-by shooting does not. *Id*. There is a possibility that a jury could convict a defendant of drive-by shooting but acquit them of murder—or convict for murder and acquit for drive-by shooting. Thus, attempted murder and drive-by shooting are not the same in law because each has at least one element not included in the other. *Borrero*, 161 Wn.2d at 537.

They are also not the same in fact, because each offense required proof of a fact the other did not. Here, drive-by shooting required proof of use of a vehicle and discharge of a firearm from within that vehicle. Not so for attempted murder; there are no specific requirements for the manner of attack (e.g., from a vehicle), only requirements of a substantial step, premeditation, and an intent

to kill. To satisfy these elements, witnesses testified that McGhee said just prior to the shooting that he was going to "pop off" on Rogers. Witnesses also testified that they observed McGhee reposition his vehicle for ease of escape and improved vantage point and shoot multiple times, striking Rogers. These are not the same facts as would be required to prove discharging a firearm from a motor vehicle, which is proved with the testimony that he fired from his car. The two crimes are not the same in fact.

Double jeopardy does not bar McGhee's convictions for both drive-by shooting and attempted murder.

In his brief, McGhee relies on a case dealing with the merger doctrine, *In re Personal Restraint of Francis*, 170 Wn.2d 517, 242 P.3d 866 (2010). In that case, our state Supreme Court held that an assault in the second degree conviction merged into an attempted robbery conviction, reasoning that the sole purpose of the assault in the second degree was to facilitate the attempted robbery, and that the assault that followed was not separate and distinct from the attempted robbery; it was incidental to it. *Id.* at 525. In other words, because the assault increased the degree of the robbery, the crimes merged. *Id.*

McGhee asserts that the same concepts apply here, because according to the State's theory, the sole purpose for the drive-by shooting was the attempted murder of Rogers. There was no other separate and distinct purpose and the substantial step for the attempted murder was, according to the State, shooting at Rogers. McGhee reasons that this means count 3 should be vacated and the case should be remanded for resentencing.

McGhee's argument is not viable. Merger is a distinct concept from double jeopardy, and *Francis* does not support his claims. Under the merger doctrine, when the degree of one offense is elevated by conduct separately criminalized by the legislature, the court will presume the

legislature intended to punish both offenses through a greater sentence for the greater crime. *Id.*; *see also State v. Vladovic*, 99 Wn.2d 413, 419, 662 P.2d 853 (1983). Merger does not apply here. Drive-by shooting did not elevate the attempted murder charge, nor did the attempted murder elevate the drive-by shooting charge; the two crimes are not so linked.

Double jeopardy does not bar McGhee's conviction for both drive-by shooting and attempted murder.

B.      The Offenses Do Not Constitute the Same Criminal Conduct

"[W]henever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score." RCW 9.94A.589(1)(a). Crimes may not, however, be counted separately in the offender score calculation if they encompass the "same criminal conduct." RCW 9.94A.589(1)(a). Same criminal conduct is "two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a). Unless all of these elements are present, the criminal offenses must be counted separately. *State v. Chenoweth*, 185 Wn.2d 218, 220, 370 P.3d 6 (2016); *State v. Bell*, 26 Wn. App. 2d 821, 841, 529 P.3d 448 (2023).

A trial court's determination of whether multiple crimes constitute the same criminal conduct is reviewed for abuse of discretion or misapplication of the law. *State v. Graciano*, 176 Wn.2d 531, 536-37, 295 P.3d 219 (2013). "[W]hen the record supports only one conclusion on whether crimes constitute the 'same criminal conduct,' a sentencing court abuses its discretion in arriving at a contrary result." *Id*. at 537-38.

A defendant generally waives the right to argue on appeal that multiple convictions constitute the "same criminal conduct" if not raised below unless the trial attorney's failure to argue same criminal conduct amounts to ineffective assistance of counsel. *See Bell*, 26 Wn. App. 2d at 841. Presumably, McGhee argues ineffective assistance of counsel as the reason it was not addressed at the trial court. To determine whether trial counsel was ineffective in not arguing same criminal conduct, we must determine whether he would have been successful if it was raised, and that requires addressing whether the crimes are same criminal conduct. McGhee cannot meet this burden because, as addressed above, the two offenses do not encompass the same criminal conduct.

The offenses do not encompass the same criminal conduct because they require proof of different levels of intent. Drive-by shooting requires recklessness. *See In re Pers. Restraint of Bowman*, 162 Wn.2d 325, 332, 172 P.3d 681 (2007); RCW 9A.36.045(1). On the other hand, the crime of attempted murder requires specific, premeditated intent to cause the death of another. RCW 9A.28.020(1); RCW 9A.32.030(1)(a). The two crimes do not have the same criminal intent, so are not the same criminal conduct. RCW 9.94A.589(1)(a). McGhee's counsel was not ineffective for failing to raise the argument before the trial court because the argument would not have been successful; McGhee fails to show prejudice as required for an ineffective assistance of counsel claim. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); *State v. McFarland*, 127 Wn.2d 322, 334–35, 899 P.2d 1251 (1995).

There was no error under either the double jeopardy prohibition or the same criminal conduct statute; there was no sentencing error.

CONCLUSION

We affirm McGhee's conviction and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, J.

We concur:

Glasgow, C.J.

Price, J.